KIM E. MILLER (178380)
**KAHN SWICK & FOTI, LLC**
250 Park Avenue, Suite 2040
New York, NY 10177
Telephone: (212) 696-3730
Facsimile: (504) 455-1498
kim.miller@ksfcounsel.com

LEWIS S. KAHN
**KAHN SWICK & FOTI, LLC**
1100 Poydras Street, Suite 3200
New Orleans, LA 70163
Telephone: (504) 455-1400
Facsimile: (504) 455-1498
lewis.kahn@ksfcounsel.com

*Counsel for Plaintiff Sam Rachimi*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAM RACHIMI, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>SILVER LAKE GROUP, L.L.C., BC PARTNERS LLP, RAYMOND SVIDER, and JUSTIN BATEMAN,<br><br>Defendants. | Case No. _____<br><br>**CLASS ACTION COMPLAINT**<br><br>JURY TRIAL DEMANDED |

CLASS ACTION COMPLAINT

# I. NATURE OF THE ACTION

1. This is a putative class action for violations of the federal securities laws. Plaintiff Sam Rachimi ("Plaintiff"), by and through his undersigned counsel, brings this action pursuant to the Securities Exchange Act of 1934 (the "Exchange Act"). Plaintiff's claims are brought on behalf of all persons who purchased or otherwise acquired securities of Intelsat S.A. ("Intelsat" or the "Company") contemporaneously with Defendants' unlawful trades from November 5, 2019 through and including November 18, 2019, inclusive (the "Class Period"), and were damaged by the conduct asserted herein (the "Class").

2. Plaintiff's allegations are based upon counsel's investigation except as to the allegations specifically pertaining to Plaintiff, which are based upon his personal knowledge. Counsel's investigation included, inter alia, a review of: (i) Intelsat's public filings with the SEC; (ii) press releases and other public statements made by Defendants; (iii) analyst and media reports; (iv) publicly-available trading data regarding the Company; and (v) documents and information obtained from third parties. Plaintiff believes that substantial evidentiary support exists for the allegations set forth herein will be available after a reasonable opportunity for discovery.

3. This action is based on the unlawful use of material non-public information by BC Partners LLP ("BC Partners") and Silver Lake Group, L.L.C. ("Silver Lake" together, with its affiliates, including, but not limited to, SLP III Investment Holding S.à.r.l., Silver Lake Partners III, L.P., Silver Lake Technology Investors III, L.P., Silver Lake Technology Associates III, L.P., and SLTA III (GP), L.L.C.). BC Partners and Silver Lake. who collectively gained over $185 million in profits and losses avoided by selling shares of Intelsat to Plaintiff and other unknowing public shareholders prior to disclosing the true financial and operational condition of Intelsat.[1]

4. Prior to the inception of the Class Period, Intelsat endeavored for several years to clear hundreds of megahertz ("MHz") of wavebands for 5G usage in conjunction with the Federal

---

[1] Defendants BC Partners and Silver Lake possessed significant control over the Company, which was initially acquired in February 2008 by a consortium of BC Partners and Silver Lake investors. Subsequent governance agreements gave BC Partners and Silver Lake additional control mechanisms over the Company.

1

CLASS ACTION COMPLAINT

Communications Commission ("FCC"), in exchange for monetary compensation, specifically, the "C-Band," a range of mid-level bands that Intelsat and a few other satellite operators held usage rights.

5. One such plan, in conjunction with Intel Corporation ("Intel"), called for satellite operators to identify geographic areas across the country that they could clear for C-Band use, among other provisions. Thereafter, Intelsat and SES, a fellow fixed satellite services ("FSS") C-Band operator, declared an agreement to open access to 100 MHz of nationwide C-Band to wireless operators, which was viewed favorably by analysts.

6. Subsequently, the C-Band Alliance ("CBA"), a consortium of FSS providers that utilize the C-Band in the United States (SES, Eutelsat, Telesat, and Intelsat), proposed freeing up 200 MHz of spectrum in a 18-36 month time frame from a FCC order via a private sale process with the CBA to cover costs of additional satellite capacity and repointing antennas, and with all proceeds going to the CBA members, which was viewed favorably by analysts.

7. On November 18, 2019, Intelsat's proposal was rejected by the FCC, which indicated a preference for a public auction of the C-Band spectrum rather than a private sale, as shown by FCC Chairman Ajit Pai's Twitter statement that "I'm confident they'll quickly conduct a public auction that will give everyone a fair chance to compete for this #5G spectrum, while preserving availability of the upper 200 MHz of the band for continued delivery of programming."

8. Following this news, Intelsat's stock fell over 40%, closing down from $13.41 per share on November 15, 2019 to $8.03 per share on November 18, the next trading day, on extremely heavy volume.

9. Subsequent to the November 18, 2019 revelations, news media reports revealed that, prior to the news of the FCC's denial, hundreds of millions of dollars of shares of Intelsat were sold by certain insiders with knowledge of the occurrence. For example, as reported by *Bloomberg News* and the *New York Post*, the Company's Chief Executive Officer ("CEO"), Stephen Spengler ("Spengler"), had met with the FCC's senior counsel, Nicholas Degani ("Degani") on November 5, 2019 regarding the private sale plan. However, subsequent to the November 5th meeting but prior to

Intelsat's November 8, 2019 submission of a *revised* proposal to the FCC, on November 6, 2019, Defendants apparently sold 10 million Intelsat shares for approximately $24.60 per share. Further, the transactions were reportedly made with "no advance warning that the sale was coming" and with buyers "told they had an hour or so to decide" to purchase this huge block of insider shares.

10. Defendants BC Partners and Silver Lake knew that trading based on this confidential material information was prohibited, or were otherwise reckless in not knowing, but did so anyway, disposing of their Intelsat stock to Plaintiff and other class members prior to the news was announced and the Company's shares plummeted.

11. As a result of their illegal and improper course of conduct, Defendants' violations of U.S. securities laws have damaged Plaintiff and the Class.

## II.   JURISDICTION AND VENUE

12. The claims herein arise under and pursuant to Sections 10(b), 20A, and 20(a) of the Exchange Act, 15 U.S.C. §§78j, 78t-1, and 78t(a).

13. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act, 15 U.S.C. § 78aa, because this is a civil action arising under the laws of the United States.

14. Venue is proper in this District pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1391. Defendant Silver Lake is based in this District.

15. In connection with the acts, omissions, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## III.  PARTIES

### A.   Plaintiff

16. Sam Rachimi purchased Intelsat securities during the Class Period as described in his certification attached hereto, and as incorporated by reference herein, and suffered damages thereon when Inside Information, including, but not limited to, the details of the November 5, 2019 meeting

between Intelsat and the FCC (that resulted in Intelsat submitting a revised proposal to the FCC on November 8, 2019), was publicly disclosed, causing the price of Intelsat securities to decline.

B.  **Defendants**

17.  Defendant BC Partners, a substantial Intelsat shareholder since 2008, is incorporated in England and Wales with its registered office at 40 Portman Square, London, and is authorized and regulated by the Financial Conduct Authority (the "FCA") in the United Kingdom. Defendants Raymond Svider and Justin Bateman are representatives of BC Partners that served on Intelsat's board of directors. According to public filings, BC Partners owned over 40.6 million Intelsat shares as of September 30, 2019 and sold over 5.9 million shares in the period ended December 31, 2019.

18.  Defendant Silver Lake Group, L.L.C., a Delaware limited liability company with its principal place of business in Menlo Park, California, operates as an investment management firm registered with the SEC, with approximately $2.8 billion in assets under management. Silver Lake Group, L.L.C. is the sole member of Silver Lake Partners III, LP with control over related entities, SLP III Investment Holding S.à.r.l.; Silver Lake Partners III, L.P.; Silver Lake Technology Investors III, L.P.; Silver Lake Technology Associates III, L.P.; and SLTA III (GP), L.L.C. (Delaware), collectively referred to herein as "Silver Lake." According to public filings, Silver Lake owned over 9.8 million Intelsat shares as of September 30, 2019, representing approximately 7% of the Company's total shares outstanding, and sold over 2.8 million shares in the period ended December 31, 2019, reducing it from Intelsat's second largest shareholder to its fourth largest.[2]

19.  Defendant Raymond Svider ("Svider") has served as a director of Intelsat since February 2008, as the Chairman of the Board since May 2008, as a director and Chairman of the

---

[2]  This calculation is consistent with the statement of Silver Lake in its Schedule 13G, filed with the SEC on February 12, 2020, that its ownership percentages "assume that there are 141,000,000 common shares outstanding, based on the Issuer's [*i.e.*, Intelsat's] Report on Form 6-K filed with the Securities and Exchange Commission on October 29, 2019."

board of directors of Intelsat Global Holdings S.A. since July 2011, and is also present Chairman of BC Partners based in its New York office.

20. Defendant Justin Bateman ("Bateman") has served as a director of Intelsat since July 2011 and is also a Partner of BC Partners based in its New York office.

21. "Defendants" collectively referred to herein include BC Partners, Silver Lake, Svider, and Bateman.

## IV. SUBSTANTIVE ALLEGATIONS

22. Intelsat is a communications satellite services provider organized as a public limited liability company (société anonyme) under the laws of the Grand-Duchy of Luxembourg on July 8, 2011 with its principal executive office in Luxembourg. The Company completed its initial public offering ("IPO") on April 23, 2013, with its common shares listed on the New York Stock Exchange ("NYSE") under the symbol "I."

23. Intelsat "hold[s] the largest collection of rights to well-placed orbital slots in the most valuable C- and Ku-band spectrums" with a "fleet of 54 geosynchronous satellites" (as of December 31, 2019) that covers "more than 99% of the world's populated regions." Its "satellites primarily provide services in the C- and Ku-band frequencies, which form the largest part of the fixed satellite services ('FSS') sector."

24. As stated above, the Company was acquired in 2008 in a transaction led by Defendants BC Partners and Silver Lake, who continued thereafter to maintain control over the Company including being expressly granted board-level access to the Company's private information.

25. Prior to its IPO, the Company entered into a governance agreement with affiliates of BC Partners and Silver Lake that granted BC Partners the ability to nominate up to four directors to the Board and Silver Lake the ability to nominate one director to the Board, subject to their

percentage of ownership.

26. The Company's agreements with BC Partners and Silver Lake, and the accompanying rights to appoint members to the Board, remained following Intelsat's June 6, 2018 secondary offering ("June SPO") and its November 30, 2018 secondary offering ("November SPO").

27. For example, the Company's registration statement and prospectus filed with the SEC in connection with its June SPO, specified that BC Partners and Silver Lake expected to hold in the aggregate approximately 58-59% of Intelsat's common shares and that "by virtue of their share ownership, [they] may be able to influence decisions to enter into any corporate transaction or other matter that requires the approval of shareholders." Likewise, the Company's registration statement and prospectus issued in connection with its November SPO contained similar provisions.

28. Later, pursuant to a New Governance Agreement entered into between the Company and BC Partners in December 2018, BC Partners had the right to nominate two directors to the Board if it owned at least 25% of Intelsat's outstanding common shares (otherwise one director provided it owned at least 5%) and certain information rights, "including the receipt of the board meeting materials provided to each director."  The Company also entered into a New Shareholders Agreement with Silver Lake giving it the right to "receive certain information required to meet internal and external reporting or other legal/compliance obligations" provided it owned over 5% of Intelsat's outstanding shares.

29. In July 2017, the FCC issued notice of its intent to explore certain bands for wireless broadband usage, including the C-Band, 3.7-4.2 GHz.

30. Subsequently, in October 2017, the Company submitted a joint plan in conjunction with Intel Corporation ("Intel") wherein present spectrum holders could reach commercial agreements directly with interested parties for C-Band use, and that satellite operators would identify geographic areas across the country that they could clear for C-Band use, *i.e.*, moving the service or

user to another portion of the C-Band or moving ground antennas, which could be carried out on a much more expedient time frame compared to an FCC proceeding.

31. Thereafter, Intelsat and SES, a fellow FSS C-Band operator, declared an agreement to open access to 100 MHz of nationwide C-Band to wireless operators, which analysts viewed positively as an avenue for "the FCC to execute on a key White House initiative," including RBC Capital Markets, who raised its price target of Intelsat from $5 to $30.

32. In October 2018, the four U.S. FSS C-Band providers (Intelsat, SES, Eutelsat, and Telesat) joined together as the CBA, to provide a united position in response to the FCC's July 2018 Notice of Proposed Rulemaking, by which the FCC sought input on making C-Band spectrum available for terrestrial wireless use.

33. The CBA proposed freeing up 200 MHz of spectrum in an 18-36 month time frame from a FCC order via a private sale process, with the CBA to cover costs of additional satellite capacity and repointing antennas and with all proceeds going to the CBA members, which analysts viewed favorably as "the most workable and timely solution."

34. On November 5, 2019, the inception of the Class Period, a meeting was held between the Company's CEO, Spengler, and the FCC's senior counsel, Degani, regarding Intelsat's private sale plan; however, on November 8, 2019, the Company issued a *revised* proposal increasing its offer to include giving up even more spectrum for sale.

35. On November 18, 2019, the private sale proposal by Intelsat was denied by the FCC in favor of a public auction process, with FCC Chairman Pai stating via Twitter that "I'm confident they'll quickly conduct a public auction that will give everyone a fair chance to compete for this #5G spectrum, while preserving availability of the upper 200 MHz of the band for continued delivery of programming."

36. Following this news, Intelsat's stock fell over 40%, closing down from $13.41 per share on November 15, 2019 to $8.03 per share on November 18, the next trading day, on extremely heavy volume. The next day, a day after the FCC's decision, Intelsat's share price fell again, closing

at $6.09, another one-day drop of over 24%.

37. Subsequent to the November 18, 2019 revelation, news media reports revealed that, prior to the news of the FCC's denial, significant shares of Intelsat were sold by certain insiders with knowledge of the occurrence. For example, on November 6, 2019, Defendants apparently sold 10 million Intelsat shares for approximately $24.60 per share. Further, as reported by the *New York Post*, the sales were apparently pitched after market close on November 5, 2019, with "no advance warning that the sale was coming" and with buyers "told they had an hour or so to decide."

38. Through their sales of Intelsat stock, which were priced 75% higher than Intelsat's share price following the FCC's November 18, 2019 announcement, Defendants BC Partners and Silver Lake gained over $185 million in profits and avoided losses.

## V.   CONTEMPORANEOUS PURCHASES

39. Plaintiff purchased Intelsat securities contemporaneously (within the meaning of §20A of the Exchange Act, 15 U.S.C. §78t-1) with the Defendants' sales of Intelsat common stock.

## VI.   LOSS CAUSATION

40. Defendants traded while in possession of material non-public information. When the information became publicly known, the price of Intelsat securities declined sharply as a result of the disclosure. As a result of his purchases of Intelsat securities during the Class Period, Plaintiff and other members of the Class suffered economic losses, *i.e.*, damages under the federal securities laws.

## VII.   CLASS ACTION ALLEGATIONS

41. Plaintiff brings this action as a class action pursuant to Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure on behalf of a class consisting of all persons who purchased or otherwise acquired Intelsat securities during the Class Period and were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of Silver Lake and BC Partners, members of their immediate families and their legal representatives, heirs, successors or assigns, and any entity in which Defendants have or had a controlling interest.

42. The members of the Class are so numerous that joinder of all members is impracticable. The disposition of their claims in a class action will provide substantial benefits to the

parties and the Court.

43. There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class which predominate over questions which may affect individual Class members include:

(a) Whether Defendants violated the Exchange Act;

(b) Whether Intelsat supplied the Inside Information to Defendants BC Partners and Silver Lake and whether Defendants BC Partners and Silver Lake traded Intelsat shares while in possession of material non-public information concerning Intelsat;

(c) Whether Defendants BC Partners and Silver Lake exercised control over Intelsat within the meaning of §20(a) of the Exchange Act, 15 U.S.C. §78t(a), and whether such Defendants are entitled to assert the defense of good faith;

(d) Whether the Inside Information was material; and

(e) The amount by which Plaintiff was damaged and Defendants profited and avoided losses as a result of the securities law violations alleged herein.

44. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law, as complained of herein.

45. Plaintiff will adequately protect the interests of the Class and has retained counsel who are experienced in class action securities litigation and possess the necessary financial resources to pursue this matter on behalf of the Class.  Plaintiff has no interests that conflict with those of the Class.

46. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

## VIII. APPLICABILITY OF PRESUMPTION OF RELIANCE

47. Plaintiff will rely, in part, upon the presumption of reliance established by the fraud on-the-market doctrine in that:

(a) Defendants made public misrepresentations or failed to disclose material facts during

9

CLASS ACTION COMPLAINT

the Class Period;

(b) The omissions and misrepresentations were material;

(c) The Company's securities traded in efficient markets;

(d) The Company's securities were liquid and traded with moderate to heavy volume during the Class Period;

(e) The Company traded on the NYSE; and

(f) Plaintiff and other members of the Class purchased and/or sold the applicable Intelsat securities between the time Defendants failed to disclose material facts and traded thereon and the time the true facts were disclosed, without knowledge of the omitted facts.

48. Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

## FIRST CLAIM

### Violation of Section 10(b) of the Exchange Act
### and Rule 10b-5 Promulgated Thereunder
### (Against All Defendants)

49. Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

50. The information provided to Silver Lake and BC Partners about the FCC Meeting was material and non-public and was in each case, considered confidential by Intelsat, which was the source of the information, and Intelsat had policies protecting confidential information.

51. The material non-public information was obtained by Silver Lake and BC Partners pursuant to their agreements with Intelsat and as a result of Svider's and Bateman's positions at Intelsat.

52. Silver Lake and BC Partners knew, recklessly disregarded, or should have known that they owed a fiduciary duty, or obligation arising from a similar relationship of trust and confidence, to Intelsat to keep the information confidential.

53. Nevertheless, while in possession of material, non-public adverse information, Defendants sold approximately 10 million shares of Intelsat.

54.  By virtue of the foregoing, all Defendants, and each of them, in connection with the purchase or sale of securities, by the use of the means or instrumentalities of interstate commerce, or of the mails, or a facility of a national securities exchange, directly or indirectly:

(a)  Employed devices, schemes, or artifices to defraud;

(b)  Made untrue statements of material fact or omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or

(c)  Engaged in acts, practices, or courses of business that operated, or would have operated, as a fraud or deceit upon persons.

55.  By virtue of the foregoing, all Defendants, and each of them, directly or indirectly, violated, and unless enjoined, will again violate, §l0(b) of the Exchange Act, 15 U.S.C. §78j(b), and Rule 10b-5 there under, 17 C.F.R. §240.10b-5.

56.  Plaintiff contemporaneously purchased and/or sold securities of the same class as those sold by Defendants BC Partners and Silver Lake.

### SECOND CLAIM

**Violation of Section 20(A) of the Exchange Act**
**(Against All Defendants)**

57.  Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

58.  This Claim is brought against all Defendants under §20A of the Exchange Act, 15 U.S.C. §78t-1.

59.  Silver Lake and BC Partners knew, recklessly disregarded, or should have known that they had received material, adverse non-public information and that they owed a fiduciary duty, or obligation arising from a similar relationship of trust and confidence, to Intelsat to keep this information confidential.

60.  Nevertheless, while in possession of material, non-public adverse information, Defendants sold approximately 10 million shares of Intelsat.

61. By virtue of the foregoing, Defendants, in connection with the purchase or sale of securities, by the use of the means or instrumentalities of interstate commerce, or of the mails, or a facility of a national securities exchange, directly or indirectly:

(a) Employed devices, schemes, or artifices to defraud;

(b) Made untrue statements of material fact or omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or

(c) Engaged in acts, practices, or courses of business that operated, or would have operated, as a fraud or deceit upon persons.

62. Plaintiff contemporaneously purchased and/or sold securities of the same class as those sold by Defendants BC Partners and Silver Lake.

63. By virtue of the foregoing, Defendants are jointly and severally liable to Plaintiff and the Class for their insider sales pursuant to §20A of the Exchange Act, 15 U.S.C. §78t-1.

## THIRD CLAIM

### Violation of Section 20(a) of the Exchange Act
### (Against All Defendants)

64. Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

65. This Claim is brought against Defendants for control person liability under §20(a) of the Exchange Act.

66. Pursuant to §20(a) of the Exchange Act:

> Every person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable . . . , unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.

67. The Defendants named in this count did not act in good faith and directly and/or indirectly induced the wrongful acts complained of herein by:

(a) Permitting the insider sales to occur with actual knowledge or reckless disregard for whether the entities trading possessed material non-public information; or

(b) Failing to adequately supervise their own action in connection with the acquisition of the Inside Information and trading thereon.

68. By virtue of the foregoing, the Defendants named in this count are jointly and severally liable, pursuant to §20(a) of the Exchange Act, to Plaintiff and the Class with the Defendants liable under the First Claim above.

## IX. PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

69. Determining that this action is a proper class action pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure on behalf of the Class Classes as defined herein, and a certification of Plaintiff as class representative pursuant to Rule 23 of the Federal Rules of Civil Procedure and appointment of Plaintiff's counsel as Class Counsel;

70. Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

71. Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees, and other costs; and

72. Awarding such other and further relief as this Court may deem just and proper.

## X. JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff hereby demands trial by jury of all issues that may be so tried.

Dated: June 8, 2020

Respectfully submitted,

**KAHN SWICK & FOTI, LLC**

*/s/ Kim E. Miller*

13

CLASS ACTION COMPLAINT

Kim E. Miller (178370)
250 Park Avenue
New York, NY 10177
Telephone: (212) 696-3730
Facsimile: (504) 455-1498
kim.miller@ksfcounsel.com

**KAHN SWICK & FOTI, LLC**
Lewis S. Kahn
1100 Poydras Street, Suite 3200
New Orleans, LA 70163
Telephone: (504) 455-1400
Facsimile: (504) 455-1498
lewis.kahn@ksfcounsel.com

**BARBUTO & JOHANSSON, P.A.**
Anthony M. Barbuto (243188)
Carly A. Johansson
12773 W. Forest Hill Blvd., Ste. 101
Wellington, Florida 33414
Telephone: (561) 444-7980
Toll Free: (888) 715-2520
Fax: (561) 790-3519
anthony@barjolaw.com
carly@barjolaw.com

*Counsel for Plaintiff Sam Rachimi*

## CERTIFICATION PURSUANT TO SECURITIES LAWS

**SAM RACHIMI** ("Plaintiff") declares, as to the claims asserted under the federal securities law, that:

1. Plaintiff has fully reviewed the facts of the complaint alleging violations of the securities laws and has authorized the filing of a complaint in this matter.

2. Plaintiff did not purchase securities of **Intelsat S.A.** at the direction of counsel or in order to participate in a private action under the federal securities laws.

3. Plaintiff is willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary.

4. During the Class Period, Plaintiff has executed transactions in the securities of **Intelsat S.A.** The transactions in the attached Schedule set forth all of the transactions of Plaintiff in **Intelsat S.A.** securities during the Class Period specified in the Complaint.

5. In the last three years, Plaintiff has not sought to serve as a representative party on behalf of a class in an action filed under the federal securities laws, except as indicated herein.

6. Plaintiff will not accept payment for serving as a plaintiff representative beyond his pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the Class as ordered or approved by the Court.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: June 7, 2020

_____
Plaintiff Signature

_____
Sam Rachimi
Printed Name

**Intelsat Securities Litigation**
**Class Period Transactions of Sam Rachimi in Securities of Intelsat S.A.**
**Class Period Begins:** 11/5/2019
**Class Period Ends:** 11/18/2019

**Common Stock (NYSE: "I")**

| Date: | Transaction: | Quantity: | Price: |
|---|---|---|---|
| 11/12/2019 | Purchase | 1,500 | $ 22.25 |
| 11/12/2019 | Purchase | 1,000 | $ 21.98 |
| 11/12/2019 | Purchase | 1,000 | $ 21.52 |
| 11/14/2019 | Purchase | 1,000 | $ 11.70 |
| 11/14/2019 | Purchase | 2,500 | $ 12.01 |
| 11/14/2019 | Purchase | 1,500 | $ 12.05 |

**Options**

| Date: | Transaction: | Quantity: | Price: |
|---|---|---|---|
| 11/6/2019 | Purchase Put @ $20 | 15 | $ 1.40 |
| 11/6/2019 | Purchase Put @ $20 | 15 | $ 1.39 |
| 11/6/2019 | Purchase Put @ $20 | 30 | $ 1.42 |
| 11/6/2019 | Purchase Put @ $21 | 40 | $ 1.75 |
| 11/6/2019 | Sale Put @ $25 | 15 | $ 3.45 |
| 11/6/2019 | Sale Put @ $25 | 15 | $ 3.44 |
| 11/6/2019 | Sale Put @ $25 | 30 | $ 3.47 |
| 11/6/2019 | Sale Put @ $28 | 40 | $ 5.40 |
| 11/8/2019 | Sale Put @ $27 | 25 | $ 4.50 |